UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

EARL LEE SULLIVAN,

        Plaintiff,

v.                                          Case No.  2:15-cv-00020
                                            HON.  GORDON J. QUIST

SUSAN WILSON,

        Defendant.

_____/

REPORT AND RECOMMENDATION

        Plaintiff Earl Lee Sullivan filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several defendants, including Defendant Nurse Practitioner Susan Wilson. Plaintiff alleges an Eighth Amendment violation based on the treatment of his chronic hypertension. Defendant Wilson now moves for summary judgment.

        Plaintiff alleges several instances of inappropriate medical treatment between May, 2013, and August, 2014, while incarcerated at the Chippewa Correctional Facility. Plaintiff suffers from chronic hypertension, for which he takes prescribed medications daily. Plaintiff was prescribed several medications (Aspirin, Nitroglycerin, Vasotec, Cardura, Tenormin, and Imdur) for his cardiovascular issues and hypertension in May of 2013 to be taken for 12 months. PageID.475. According to Plaintiff's medical records, his medical visits, in June of 2013, were for dental issues. The records do not indicate that he ran out of his prescribed medications; although, Plaintiff alleges that he ran out of his medications and was not provided a new supply. PageID.476-483. On July 17, 2013, Plaintiff submitted a kite, stating that he ran out of his medication and had a toe issue that had

not been addressed. Plaintiff was seen by healthcare staff and new shoes were issued to him. Additionally, he was monitored by healthcare staff and advised that a new supply of his medications had been ordered. He was supplied his medications on July 18, 2013. PageID.484-487. Defendant then saw Plaintiff on August 8, 2013, for elevated blood pressure, at which time Plaintiff reported that he had not been taking one of his medications, Imdur. Defendant provided a dose of a hypertension medication to Plaintiff and advised him that he should continue taking Imdur. PageID.497-499.

Plaintiff was scheduled to be seen by Defendant on August 14, 2013; however, he had been taken to the hospital the night before for a severe hypertensive crisis. PageID.504-506. Plaintiff returned from the hospital on August 15, 2013, with new and additional prescriptions, at which time he was issued medications for two days and advised to schedule a follow up visit. PageID.507. Defendant reviewed Plaintiff's medical chart with other healthcare staff, at which time she determined that providing Plaintiff his medication on a restricted basis would be in his best interest. Previously, Plaintiff was issued supplies of his medication to be kept with him in his cell. However, due to a concern of noncompliance with his prescriptions, which was the most likely cause of his elevated blood pressure and hypertensive crisis, Defendant determined that monitoring Plaintiff's medication intake would be in his best interest. Defendant then adjusted Plaintiff's medication prescriptions based on the hospital's recommendations. Defendant ordered each of the recommended medications, only altering the prescription for Apresoline from 10mg four times a day to 20mg twice a day. This was done to allow for the administration of the medication in accordance with the prison's scheduled medical lines. Plaintiff still received 40mg of Apresoline daily. For the following two months, Plaintiff's blood pressure checks did not require additional medication. PageID.448-449.

On August 28, 2013, Plaintiff submitted a kite, complaining about his medication times and restrictions. He was then advised that his blood pressure was being monitored and that he was receiving the medication needed to manage his condition. PageID.525. Plaintiff complained on August 30, 2013, as well as several times in September of 2013, of chronic headaches, shoulder and ankle pain, as well as an issue with his toe. Plaintiff was examined on all of these occasions and his issues were addressed. PageID.526-543. Defendant saw Plaintiff on September 10, 2013, for complaints of increased urination and musculoskeletal pain. The examination yielded normal results. Defendant offered Plaintiff an increased prescription for Hytrin (for urinary retention), to have his shoes re-measured to address his toe issues, and an NSAID for his pain, all of which Plaintiff refused. On September 11, 2013, Defendant entered a special accommodation for Plaintiff for no yard crew. PageID.544-546.

Plaintiff came to the healthcare unit in the morning of September 13, 2013, complaining of chest pain. His condition was tested and monitored, and he was provided medication for pain relief. PageID547-550. On September 30, 2013, Plaintiff came to the healthcare unit complaining of swelling. No swelling was found on his neck, but Plaintiff did have slight puffiness on the left side of his face. Plaintiff was instructed to alternate between Motrin and Tylenol for more effective pain relief and asked to return to nursing the following day to check on his swelling. Plaintiff did not complain of any side effects suffered from his medication at that time. PageID.553-554. Plaintiff was seen by healthcare staff on October 1 and 2, 2013, to address his swelling. He was prescribed medication, as well as a hot water bottle. Plaintiff did not raise any concerns regarding side effects at either of these appointments. PageID.557-561.

Defendant saw Plaintiff for a chronic care appointment on October 4, 2013. Defendant addressed a variety of Plaintiff's medical issues and offered him additional treatment to

- 3 -

manage his chronic pain, which he refused. Plaintiff did not complain of any side effects at this time. PageID.564-569. Plaintiff submitted a kite on October 8, 2013, complaining of muscle weakness and swelling in his feet. He was instructed that he had been recently seen for these issues and was told to follow the prescribed treatment, which he declined. PageID.570,572. Plaintiff was seen by healthcare staff on December 26, 2013, for complaints of swelling and sinus congestion, at which time his medical issues were addressed. PageID.575-579. Plaintiff was then seen by Defendant on January 2, 2014, for complaints of musculoskeletal pain. Examinations did not show any injuries or deformities, and a treatment plan was developed for Plaintiff. PageID.583-585. Defendant then saw Plaintiff on January 15, 2014, for complaints of loose stools and musculoskeletal pain. Examinations yielded normal results. Defendant prescribed Plaintiff medication for loose stools and instructed him to continue his existing course of treatment. PageID.592-594. Plaintiff was non-compliant with his Apresoline prescription in February and March of 2014, at which time he was referred to counseling and blood pressure checks were ordered for him three times a week. PageID.607-608. Plaintiff returned his hot water bottle on March 12, 2014, stating that he was feeling better. PageID.611.

On April 8, 2014, Defendant saw Plaintiff for a chronic care visit for a variety of issues. Plaintiff's blood pressure was within the normal range and Defendant adjusted his medications accordingly. No concerns of side effects were raised at this time by Plaintiff. PageID.645-647. Defendant next saw Plaintiff on April 23, 2014, following his dental visit, which revealed a gingival overgrowth. The dentist believed that this was due to Norvasc, one of Plaintiff's hypertension medications. Defendant discontinued Norvasc and prescribed another hypertension medication instead. PageID.667-668, 670-674. Defendant saw Plaintiff in May of 2014, for neck and shoulder pain, at which time she advised him of a course of treatment for pain relief. PageID.708-

710. Defendant then saw Plaintiff on June 11, 2014, for a cardiovascular chronic care visit. Necessary examinations were performed and Defendant adjusted Plaintiff's treatment plan according to the results. PageID.727-730.

On the evening of June 18, 2014, Plaintiff came to the healthcare unit with low blood pressure and dizziness. He was monitored overnight and his medication dosage was adjusted. PageID.734, 738-741. On June 19, 2014, Plaintiff's EKG results were reviewed by a physician. It was noted that Plaintiff has an enlarged left ventricle, a condition that is common in individuals with chronically high blood pressure. There is no specific treatment for this condition except taking medication to stabilize the patient's blood pressure. PageID.742-743. Plaintiff was seen by nursing on June 20, 2014, for a blood pressure check, as well as reported pain and tightness in his muscles. He was issued a hot water bottle and directed to take pain medication. PageID.744-745.

Plaintiff submitted a kite complaining of swollen and painful gums on July 7, 2014. He was examined and provided treatment, including x-rays, salt water rinse, and pain medication, which resolved his issue by July 9, 2014. Defendant saw Plaintiff on several occasions between July 11 and July 31, 2014 for complaints of neck and shoulder pain. X-rays revealed moderate arthritic changes, but no damage or injury. Plaintiff was already being treated for this issue and was instructed to continue with his treatment plan. PageID.763-769. As of August 6, 2014, Plaintiff was refusing most of his blood pressure medications, as well as refusing to try any other medications or doses. Defendant referred Plaintiff to mental health care to determine whether he was competent to make his own medical decisions. PageID.776-781. On August 15, 2014, Plaintiff was transferred to another facility. Plaintiff's records do not reflect evidence of any side effects suffered from his hypertension medication, aside from his gum issues which had been addressed in a timely manner.

Moreover, Plaintiff's muscle pain and tension are most likely due to his arthritis, and therefore unrelated to his hypertension medication. PageID.458.

Defendant moves for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff's complaint alleges that Defendant has violated Plaintiff's Eighth Amendment rights.  The Supreme Court has held that deliberate indifference to a prisoner's serious

illness or injury states a violation of the Eighth Amendment's "cruel and unusual punishments" clause because it constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, not every claim by an inmate of inadequate medical treatment rises to the level of an Eighth Amendment violation.

The standard by which such claims are judged involves two elements: the plaintiff's medical need must be "serious," and the plaintiff must show that the defendants were "deliberately indifferent" to that need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1 (1992); *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

"Deliberate indifference" requires an intentional effort to deny or ignore Plaintiff's need for medical care. *Estelle*, 429 U.S. at 105; *see also, Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D. N.Y. 1984), *aff'd*, 762 F.2d 990 (2d Cir. 1985). Thus injury resulting from mere negligent conduct is insufficient to state an Eighth Amendment claim under Section 1983. *Estelle* 429 U.S. at 105; *see also Daniels v. Williams*, 474 U.S. 327, 333 (1986). Rather, the official's conduct "must demonstrate deliberateness tantamount to an intent to punish." *Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993).

Complaints that the doctor did not prescribe a specific medication or should have ordered specific tests or negligently failed to provide adequate medical care may state a claim for malpractice under state law but do not state a claim that an inmate's federal rights have been violated. *See, Williams v. Duckworth*, 598 F. Supp. 9, 13-15 (N.D. Ind. 1983), *aff'd without opinion*, 749 F.2d 34 (7th Cir. 1984). In *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976), cited in *Estelle*, the Sixth Circuit remarked:

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Id.* at 860, n. 5.

In addition, the Sixth Circuit recently observed:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. at 105-06).

Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-155 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. April 4, 1997). The Sixth Circuit has stated:

> The Supreme Court recently clarified the definition of deliberate indifference in the Eighth Amendment context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm. *Farmer v. Brennan*, 114 S. Ct. 1970, 1979 (1994). Deliberate indifference, the Court held, requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994). The *Farmer* Court added that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded

> reasonably to the risk, even if harm ultimately was not averted. *Farmer*, 114 S. Ct. at 1982-83.

*Sanderfer*, 62 F.3d at 154-155. As the court in *Estelle v. Gamble* explained, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Id*. at 106.

Plaintiff suffers from a serious health condition, that, if left untreated, could lead to severe damage to his health. However, he is being treated for his hypertension and other health related issues appropriately. Plaintiff has received needed medications on a regular basis. His medical records show that all of his medical concerns have been addressed in a timely, professional manner and that he was provided his prescribed medications as needed. Moreover, Plaintiff's medical records show that he has refused to take some of his medications on several occasions, which was the most likely cause of his elevated blood pressure at the time. Plaintiff was repeatedly advised of the dangers of refusing to take his medications, yet he continued to deny them.

Plaintiff also alleges that he did not have access to his prescribed medication and that this was due to his medications being provided to him on a restricted basis. However, due to his refusal to take his medications, the prison healthcare staff determined that it would be in his best interest to monitor his medication intake. It is important to note that Plaintiff's blood pressure was normal while he was taking his medications on a restricted basis. Plaintiff alleges that his medications caused severe side effects, among them gum swelling and pain. However, Plaintiff's medical records show that his medication was adjusted and his gum-related issues were addressed. Overall, Plaintiff's medical records show that each of his medical concerns were addressed in a timely manner and that he was provided adequate care. The fact that Plaintiff does not agree with his treatment does not constitute "deliberate indifference" and is not a violation of his constitutional rights.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's Motion for Summary Judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 40) be granted and that the case against Defendant Susan Wilson be dismissed.[1]

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: June 21, 2016               /s/ TIMOTHY P. GREELEY
                                   TIMOTHY P. GREELEY
                                   UNITED STATES MAGISTRATE JUDGE

---

[1] Defendants Therrian, Amble, and Hartfield did not move for summary judgment and remain defendants in this case.