UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EARL LEE SULLIVAN #156184,

    Plaintiff,

v.                                             Case No. 2:15-cv-20
                                                    HON. GORDON J. QUIST

L.T. THERRIAN, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by state prisoner Earl Lee Sullivan pursuant to 42 U.S.C. § 1983. At this stage in the proceeding, the remaining Defendants are Lieutenant Therrian; Licensed Practical Nurse Hatfield; and Corrections Officer Amble. Plaintiff alleges that Defendants Hatfield, Therrian, and Amble were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment,[1] and that Defendant Amble retaliated against him in violation of the First Amendment. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  (ECF No. 77.)  Plaintiff has filed a response. (ECF No. 79.)  Defendants have filed a reply.  (ECF No. 80.) This matter is now ready for decision.

Plaintiff suffers from chronic hypertension and cardiac disease. He has been prescribed various medications to treat his medical conditions including Aspirin, Nitroglycerin, Vasotec, Cardura, Tenormin, and Imdur.  The undersigned previously summarized Plaintiff's medical records and the extensive treatment he received while incarcerated at Chippewa

---

[1] In their reply brief, Defendants argue that Plaintiff's complaint was "devoid of any mention of an Eighth Amendment claim or Deliberate Indifference Claim" against Defendant Amble. (ECF No. 80, PageID.1220.) However, in his complaint, Plaintiff wrote that Defendant Amble "did cause suffering and pain because of not informing prisoner of a medical call out to pick up needed medication[.]" (ECF No. 1, PageID.19-20.)  Therefore, the undersigned finds that Plaintiff brought an Eighth Amendment claim against Defendant Amble.

Correctional Facility (URF) between May 2013 and August 2014.  (ECF No. 53, PageID.902-906.)

Plaintiff's claims against Defendants Hatfield and Therrian stem from events that occurred on July 17, 2013.  On that day, Plaintiff went to the medical clinic at URF because he needed his medication and was suffering from a toe injury.  Plaintiff apparently ran out of the medication 60-days earlier but never informed any healthcare providers.  While two nurses were reviewing Plaintiff's medical records, a different nurse—Defendant Hatfield—asked Plaintiff to leave the clinic because he was exhibiting disruptive behavior.  Plaintiff states that he was not being disruptive.  Defendant Hatfield then called Defendant Therrian to assist her, and Plaintiff was forced to leave the clinic without receiving his medication or being treated for his toe injury.  Shortly thereafter, on the same day, Plaintiff was ordered back to the medical clinic.  His medical records show that he was evaluated by multiple healthcare providers. To treat his injured toe, he was issued a different shoe.  As for the medications, Plaintiff was given one dose of his medication to take immediately and one dose to take the following morning.  Healthcare staff also ordered a 30-day supply of Plaintiff's medication that arrived the following morning.

On August 8, 2013, Plaintiff was seen by a health care provider because he was having trouble urinating.  During this appointment, he told the healthcare provider that he stopped taking some of his medications three weeks prior because he thought the medication was causing the side-effects. On August 13, 2013, Plaintiff was taken to the emergency room because he was suffering a severe hypertensive episode.  He remained at the hospital for three days, where he was forced to wear "leg irons and belly chains" the entire time.

In addition to the July 17, 2013, incident, Plaintiff claims that Defendant Hatfield denied him his medication on several other occasions. In his complaint, Plaintiff only identifies

-2-

one date in which Defendant Hatfield denied him his medication—September 18, 2013. (ECF No. 1, PageID.14.) In his response brief, Plaintiff identifies four dates in which Defendant Hatfield denied him his medication—August 26, 2013, September 12, 2013, September 18, 2013, and November 6, 2013. According to Plaintiff's exhibits, Defendant Hatfield initially denied Plaintiff his medication because he would show up to the medication distribution line over twenty minutes late. (ECF No. 79-5, PageID.1166-1173.) The MDOC policy requires that if an inmate is over twenty minutes late to the medication line, the inmate must obtain a pass or have an officer call to explain why he was late. Although he was initially denied his medication on these dates, Plaintiff appears to have received the full dose of medication shortly thereafter.

Plaintiff's claims against Defendant Amble stem from events that began in January 2014. On January 6, 2014, Plaintiff's steroid medication arrived at URF. Plaintiff alleges that Defendant Amble was supposed to tell him that his medication arrived and that he needed to go pick it up at healthcare. Defendant Amble failed to contact Plaintiff. Instead, a nurse contacted Plaintiff later that day to inform him that his medication arrived. The next day, on January 7, 2014, Plaintiff went to talk to Defendant Amble to ask why he was not told when the medication arrived. On January 11, 2014, Defendant Amble wrote a Class II Misconduct Ticket on Plaintiff for "Out of Place." (ECF No. 67-7, PageID.1001.) Plaintiff was subsequently found not guilty of this violation. On January 12, 2014, Plaintiff filed a grievance against Defendant Amble for failing to inform him that his medication arrived. (ECF No. 67-6, PageID.994.)

Five months later, on June 9, 2014, Defendant Amble wrote a second Class II Misconduct Ticket on Plaintiff for "Out of Place." According to the ticket, Plaintiff attempted to go to "chow" at 12:34 p.m., which he was not authorized to do so. (ECF No. 67-7, PageID.1005.) A hearing was subsequently held on the ticket, and the hearing officer found Plaintiff guilty of the

misconduct. The hearing officer explained that Plaintiff's itinerary provided that his callout was at 1:15 p.m. and, thus, not permitted to go to chow at 12:34 p.m. (ECF No. 67-7, PageID.1004.) As a result, Plaintiff lost two days of privileges.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

In addition, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also*

*Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff first alleges that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something

more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In this case, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by "denying or delaying" his medical treatment—specifically his prescribed medication. However, the record establishes that Plaintiff was never completely denied any medical treatment or any prescribed medication. It is true that on July 17, 2013, Defendants Hatfield and Therrian ordered Plaintiff out of the medical clinic. Plaintiff then submitted a kite to healthcare at 12:36 p.m. (ECF No. 42-1, PageID.484.) Plaintiff's medical records show that he was treated for his foot injury at 12:57 p.m., and received his medication at 1:19 p.m. (ECF No. 42-1, PageID.485-87.) In addition, although Plaintiff alleges that Defendant Hatfield denied him his medication several other times during the Fall of 2013, the record shows Plaintiff was only initially denied until he returned with a pass explaining why he was late. Notably, even when Plaintiff did not return to take his medication, the healthcare supervisor issued a call out for Plaintiff and he was subsequently provided his medication. (ECF No. 67-9, PageID.1009.) Finally, Plaintiff alleges that Defendant Amble denied him his medication on January 6, 2014, but, again, Plaintiff received his medication the same day after a nurse contacted him.

After carefully reviewing the record, the undersigned finds that Plaintiff was never denied any medical treatment or medication. Instead, Plaintiff's claims amount to a delay in medical treatment. Where a prisoner alleges that a delay in medical treatment violates the Eighth Amendment, he "must place verifying medical evidence in the record to establish the detrimental

effect of the delay in medical treatment." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). Plaintiff has failed to present any such evidence. Instead, Plaintiff broadly claims that the minor delay that occurred on July 17, 2013, led to his hypertensive episode on August 13, 2013. There is no support for this assertion in the record. Moreover, there is no evidence that any of the other minor delays caused any detrimental effect to Plaintiff's health. Therefore, in the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

Plaintiff next alleges that Defendant Amble retaliated against him when he wrote two false misconduct tickets against him—one on January 11, 2014, and one on June 6, 2014. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first misconduct ticket, Defendant Amble issued the ticket on January 11, 2014. Plaintiff alleges this misconduct ticket was in retaliation for Grievance # URF-1401-01177z. However, Plaintiff did not file this grievance until January 12, 2014—one day after the misconduct ticket. Although it is not entirely clear, Plaintiff appears to be arguing that he wrote the grievance on January 7, 2014, but did not file it for several days. Instead, Plaintiff

attempted to resolve the issue with Defendant Amble on January 7, 2014.  As Defendants correctly point out, several courts have held that it is not clearly established that threatening to file a grievance is protected conduct. *See McKinney v. Rutenbar*, 2016 WL 4144253, at *2 (W.D. Mich., Aug. 4, 2016); *Walden v. Palmer*, 2017 WL 1026326, at *6 (W.D. Mich., Feb. 22, 2017), R&R adopted by, 2017 WL 1020233 (W.D. Mich., Mar. 16, 2017). In this case, the record does not contain any evidence that Plaintiff even threatened to file a grievance against Plaintiff on January 7, 2014. Nor does the record contain any evidence that Defendant Amble had any knowledge that Plaintiff was contemplating filing a grievance when he issued the misconduct ticket on January 11, 2014.  Without any such evidence, Plaintiff cannot show that the misconduct ticket issued on January 11, 2014, was motivated by any protected conduct. Therefore, in the opinion of the undersigned, Defendants are entitled to summary judgment on Plaintiff's retaliation claim based on the January 11, 2014, misconduct ticket.

With respect to the second misconduct ticket, Defendant Amble issued the ticket on June 6, 2014.  Plaintiff received a hearing and was subsequently found guilty of the Class II misconduct. Plaintiff complains that he attempted to appeal this finding but the appeal "came up missing."  When a prisoner alleges that a defendant falsely charged him with a misconduct violation for retaliatory purposes, evidence that the prisoner was found guilty of the misconduct violation is sufficient to satisfy the defendant's burden.  *See Jackson v. Madery,* 158 F. App'x. 656, 662 (6th Cir. 2005) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994))); *see also Ruiz v. Bouchard*, 60 F. App'x. 572, 574 (6th Cir. 2003) ("[T]o the extent that [the prisoner] has asserted a pure retaliation claim, [he] still has not stated a claim because he was convicted of the misconduct charges.").  Here, Plaintiff was found guilty of the

Class II misconduct. The hearing officer explained that the finding of guilt was based on Plaintiff's prison itinerary. Whether Plaintiff was afforded an opportunity to appeal does not alter the fact that the underlying finding of guilt was based on some evidence. Therefore, in the opinion of the undersigned, Defendant Amble is entitled to summary judgment on Plaintiff's retaliation claim based on the June 6, 2014, misconduct ticket.

Accordingly, the undersigned recommends that the Court grant Defendants' motion for summary judgment (ECF No. 77) and that this case be dismissed in its entirety. Because this case should be dismissed, the undersigned further recommends that the Court find Plaintiff's motion for a bench trial (ECF No. 76) moot.

Should the Court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  March 14, 2018

                                                       /s/ Timothy P. Greeley
                                                       TIMOTHY P. GREELEY
                                                       UNITED STATES MAGISTRATE JUDGE